| | |
|---|---|
| Randy Sanderson, Isaiah Hughes & Sons Trucking, LLC, Final Destination Trucking, LLC, Conway Transport, LLC, and Brandon Souder, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JMS Trucking, Inc. and JMS Transportation Co., Inc., <br><br> Defendants. | CIVIL ACTION NO.: 22-59 <br><br><br> **CLASS ACTION COMPLAINT** |

# CLASS ACTION COMPLAINT

For their Class Action Complaint, Plaintiffs, Randy Sanderson, Isaiah Hughes & Sons Trucking, LLC, Final Destination Trucking, LLC, Conway Transport, LLC, and Brandon Souder (together, the "Plaintiffs"), on behalf of themselves and all others similarly situated as class representatives, state and allege as follows:

1. This is a class action case brought against Defendants JMS Trucking, Inc. and JMS Transportation Co., Inc. (collectively, "JMS" or the "JMS Defendants") for damages under the Truth-in-Leasing Act, 49 U.S.C. 14704 for violations of its corresponding federal regulations, 49 C.F.R. 371.1 *et seq.* and 49 C.F.R. § 376.1 *et seq.*, for breach of contract, for fraud, for breach of fiduciary duty, an accounting, and, in the alternative, for unjust enrichment.

## I. PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Randy Sanderson, is a resident-citizen of the state of Ohio, and is the sole member of Plaintiff Isaiah Hughes & Sons Trucking, LLC.

3. Plaintiff Isaiah Hughes & Sons Trucking, LLC is a limited liability company

formed under the laws of the state of Ohio, whose sole member, Mr. Sanderson, is also a resident and citizen of the state of Ohio.

4. Plaintiff Final Destination Trucking, LLC is a limited liability company formed under the laws of the state of Ohio, whose sole member, Bryan Taulbee, is also a resident and citizen of the state of Ohio.

5. Plaintiff Conway Transport, LLC is a limited liability company formed under the laws of the state of Kentucky, whose sole member, Danny Conway, is also a resident and citizen of the state of Kentucky.

6. Plaintiff Brandon Souder is a resident-citizen of the state of Ohio.

7. Defendant JMS Trucking, Inc. is an Iowa corporation conducting business as an authorized carrier with the United States Department of Transportation with its principal place of business in Cedar Rapids, Iowa.

8. Defendant JMS Transportation Co., Inc. is an Iowa corporation conducting business as a licensed broker with the Federal Motor Carrier Safety Administration with its principal place of business in Cedar Rapids, Iowa.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, including the Truth-in-Leasing Act, 49 U.S.C. § 1401 *et seq*. and its corresponding federal regulations.

10. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

11. This Court also has supplemental subject matter jurisdiction over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because those claims are so related

to the claims arising under the laws of the United States in the action that they form part of the same case or controversy.

12. This Court has personal jurisdiction over the JMS Defendants because the JMS Defendants are each Iowa corporations whose principal place of business is located within this District.

13. Venue is proper in this District under 28 U.S.C. § 1391 because the JMS Defendants reside in this District and/or a substantial part of the events or omissions giving rise to the claim occurred in this District. Further, venue in this District is proper because the Plaintiffs' agreements with the JMS Defendants that are the subject of this action each include a choice-of-venue provision requiring that suit be commenced within this District.

## II. FACTUAL BACKGROUND

14. On November 2, 2020, Mr. Sanderson executed an "Independent Contractor's Operating Agreement" with Defendant JMS Trucking, Inc.

15. On November 30, 2021, Final Destination Trucking, LLC also executed an "Independent Contractor's Operating Agreement" with Defendant JMS Trucking, Inc.

16. On or about September, 2019, Mr. Souder also executed an "Independent Contractor's Operating Agreement" with Defendant JMS Trucking, Inc.

17. The Independent Contractor's Operating Agreement executed by the above-referenced Plaintiffs (*hereinafter*, the "Operating Agreement") is a standard contract used by JMS Trucking, Inc. and is uniform in all material respects for each of JMS Trucking, Inc.'s contracted owner-operator drivers.

18. Pursuant to the Operating Agreement, the above-referenced Plaintiffs granted JMS Trucking, Inc. the use of their equipment and driving services for use during a stated term in the

regulated transportation of property as requested by JMS Trucking, Inc. in exchange for the compensation described in the Operating Agreement.

19. The Operating Agreement between JMS Trucking, Inc. and each of the Plaintiffs constitutes a "Lease" within the meaning of 49 C.F.R. § 376.2(e), and, accordingly, JMS Trucking, Inc. is required by federal regulation to include, adhere to, and perform certain terms in the Operating Agreement—the "Lease Requirements."

20. These "Lease Requirements" include, without limitation:

   a. A provision specifying the amount of compensation to be paid to the owner-operator. 49 C.F.R. § 376.12(d);

   b. A provision requiring JMS to provide "a copy of the rated freight bill . . . or . . . any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill." 49 C.F.R. § 376.12(g); and

   c. A provision requiring JMS to permit inspection "of the carrier's tariff or . . . other documents from which rates and charges are computed." *Id.*

21. On April 29, 2021, Mr. Sanderson's company, Plaintiff Isaiah Hughes & Sons Trucking, LLC and Defendant JMS Transportation Co., Inc. executed a "Carrier Broker Agreement."

22. On August 20, 2019, Plaintiff Conway Transport, LLC and Defendant JMS Transportation Co., Inc. also executed a "Carrier Broker Agreement."

23. The Carrier Broker Agreement executed by the above-referenced Plaintiffs (*hereinafter*, the "CBA") is a standard contract used by JMS Transportation Co., Inc. and is uniform in all material respects for each of JMS Transportation Co., Inc.'s contracted carrier

drivers.

24. Pursuant to the CBA, Plaintiffs Isaiah Hughes & Sons Trucking, LLC and Conway Transport, LLC agreed to provide the use of their equipment and driving services for use in the regulated transportation of property as requested by JMS Transportation Co., Inc. during the term of the agreement in exchange for the agreed-upon compensation that was to be reflected in the CBA.

25. As a broker, JMS Transportation Co., Inc. is obligated under federal regulations, 49 C.F.R. § 371.3, to keep certain records, such as the amount of compensation received by the broker for brokerage and non-brokerage services and the amount of any freight charges collected by the broker, and to make those records available for review by its carrier-drivers, including Plaintiffs Isaiah Hughes & Sons Trucking, LLC and Conway Transport, LLC ("Records Requirements").

26. In addition, because JMS Transportation Co., Inc. is a de facto carrier and a bona fide agent of carrier JMS Trucking, Inc., and because JMS Transportation Co., Inc. arranged for the transportation of shipments which it was authorized to transport and for which it accepted and was legally bound to transport, the CBA also constitutes a "Lease" within the meaning of 49 C.F.R. § 376.2(e). Accordingly, JMS Transportation Co., Inc., is required by federal regulation to include and abide by the Lease Requirements.

27. Throughout the time that the Plaintiffs drove for the JMS Defendants, it was understood that those drivers executing the Operating Agreement and the CBA (each a "Lease" and, collectively, the "Leases"), including the Plaintiffs, would be driving "dedicated routes" for a particular customer or customers of the JMS Defendants, meaning the Plaintiffs focused on hauling freight for a primary JMS customer on the same route on a predictable schedule.

28. Because the Plaintiffs were driving dedicated routes for the JMS Defendants, their return trips from the specified destinations were "empty miles" or "deadhead miles" for which the Plaintiffs had no chance of earning compensation or reimbursements beyond the amounts that the JMS Defendants had promised to pay for these dedicated routes pursuant to the Leases.

29. Pursuant to the Leases, the Plaintiffs were entitled to receive, among other amounts, a fixed percentage of the JMS Defendants' compensation from the customer for each load plus 100% of the fuel surcharge billed to the customer as reimbursement for fuel expenses incurred by the Plaintiffs in driving each load. (Operating Agreement ¶ 2 Ex. A; CBA ¶ 5, App'x A.)

30. Pursuant to the Leases described above, the JMS Defendants handled all billing of freight and other charges to the customer exclusively and were, therefore, obligated to provide accurate and complete disclosure to the Plaintiffs of the amounts that the JMS Defendants billed and received from the customer by, for example, disclosing copies of the freight bills, providing accurate weekly settlement statements, and by otherwise honoring the Plaintiffs' right to review the JMS Defendants' underlying freight documentation. (Operating Agreement, Introduction and ¶¶ 2-3; CBA ¶¶ 6, 15, 18.)

31. By extension, all payments for the loads driven by the Plaintiffs were invoiced and received by the JMS Defendants directly, including all payments for reimbursement of the out-of-pocket fuel expenses incurred by the Plaintiffs.

32. Included in the amounts that the JMS Defendants have been invoicing and receiving from their customers for the loads driven by the Plaintiffs are separate line items for reimbursement of fuel expenses incurred in the transit of both the loaded and empty miles respectively.

33. Even though the JMS Defendants have been invoicing and receiving fuel reimbursement from their customers for *both* the loaded and empty miles, the JMS Defendants

have furtively adopted an internal policy and practice of falsely representing to their contracted drivers, including the Plaintiffs herein, that they have invoiced and received reimbursement from customers for the loaded miles only.

34. More specifically, the JMS Defendants adopted a policy and practice of purposefully omitting disclosure of the invoiced line item for reimbursement of the "empty" miles that the JMS Defendants receive from their customers.

35. This fraudulent policy and practice has permitted the JMS Defendants to wrongfully "pocket" and withhold from the Plaintiffs approximately 50% of the out-of-pocket fuel expenses incurred by the Plaintiffs for each load that they carry pursuant to their Leases with the JMS Defendants.

36. Upon learning inadvertently that the JMS Defendants may have been misrepresenting the true amounts received from their customers, certain drivers for the JMS Defendants, including certain of the Plaintiffs, asked the JMS Defendants to provide true and accurate copies of the rated freight bills and other freight documentation reflecting the true amounts that the JMS Defendants have invoiced to their customers.

37. The JMS Defendants refused to provide such documentation and have, moreover, directed their administrative employees to refrain from providing such documentation to any driver who requests it under threat of adverse employment action.

38. In addition, the JMS Defendants have retaliated against drivers who have sought to exercise their rights to examine and scrutinize records reflecting the true amounts received from customers by, among other methods, exercising their discretion to provide less lucrative routes to those drivers in bad faith and, moreover, lodging retaliatory complaints to regulatory authorities designed to jeopardize such drivers' ability to continue to drive loads for the JMS Defendants or

any other entity.

39. In addition to wrongfully pocketing the fuel surcharge billed to customers, the JMS Defendants have adopted other policies and practices designed to effectively steal money from their drivers, including, without limitation, by: (1) wrongfully withholding from drivers funds received from customers for "detention time" intended to reimburse paused or delayed drivers and then misrepresenting to their drivers that such amounts were never invoiced or received; (2) wrongfully withholding and misrepresenting the true gross revenues invoiced or received from customers; and (3) refusing to return or credit amounts held in escrow or "maintenance accounts" for the benefit of drivers at the conclusion of such drivers' relationship with the JMS Defendants.

### III. CLASS ACTION ALLEGATIONS

40. Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed class (the "Class").[1]

> All persons, except any affiliate of the JMS Defendants and their immediate family members, who entered into an independent contractor relationship with either or both of the JMS Defendants for the provision of driving services.

41. The members of the Class are so numerous that joinder of all members is impractical.

42. The Class includes more than forty separate persons who executed Lease contracts substantially identical to the Leases executed by the Plaintiffs as alleged above. Indeed, the JMS Defendants operate a fleet of over 175 trucks, the majority of which are owner-operated, and have used uniform written contracts with such owner-operators at all relevant times, including uniform

---

[1] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

written contracts that are identical to the Operating Agreement and CBA executed by the Plaintiffs as alleged above.

43. Plaintiffs' claims are typical of the claims of the members of the Class. The Plaintiffs have all worked for the JMS Defendants as contracted truck drivers pursuant to a written and uniform agreement, whether in the form of the Operating Agreement, the CBA, or a substantially identical written contract that entitled each member of the Class to receive a percentage of the gross revenue and 100% of the fuel surcharge reimbursements received from the JMS Defendants' customers.

44. Like all other Class members, Plaintiffs have suffered injuries as a result of the JMS Defendants' failure to accurately disclose and pay the true amounts owing under the contracts with their drivers, and the JMS Defendants' policy and practice of refusing to provide accurate documentation reflecting the true amounts received from the JMS Defendants' customers.

45. There are questions of law and fact common to the claims of the Plaintiffs and the Class that predominate over any theoretical questions affecting the claims of the individual Class members only. Such common legal and factual questions include without limitation:

   a. Questions regarding the meaning, interpretation, and construction of the uniform Leases governing the Plaintiffs' and the Class members' rights to compensation;

   b. Whether the JMS Defendants paid the Plaintiffs and other members of the Class the correct amounts owing under the Leases including, but not limited to, the full amount of any fuel surcharge that the JMS Defendants charged to their customers;

   c. Whether the JMS Defendants provided accurate freight bills, settlement statements, or other disclosures to the Plaintiffs and other members of the Class, including, but not limited to, accurate disclosures regarding the full amount of any fuel surcharge that the JMS Defendants charged to their customers;

   d. Whether the JMS Defendants' failure to provide accurate freight bills, settlement statements, or other disclosures to the Plaintiffs and other members of the Class was accomplished knowingly with fraudulent intent;

e. Whether the JMS Defendants have adopted a policy or practice of withholding accurate rated freight bills or other documentation from the Plaintiffs and other members of the Class;

f. Whether the alleged misconduct of the JMS Defendants is or was willful and conducted with deliberate disregard for the rights of the Plaintiffs and the other members of the Class; and

g. Questions regarding the manner in which the JMS Defendants have maintained their books and records reflecting the true amounts that were invoiced to, and received from, their dedicated route customers for the loads driven by the Plaintiffs and other members of the Class.

46. Any and all of the Plaintiffs would fairly and adequately represent the Class if appointed as class representatives, and have engaged the experienced and competent undersigned counsel for this purpose. The Plaintiffs have no interests antagonistic to one another or to those of other members of the Class. The Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

47. In accordance with Federal Rule of Civil Procedure 23(b), a class action is the superior method for the fair and efficient adjudication of the Class claims for a number of reasons, including, without limitation, because class treatment will eliminate needlessly duplicative litigation, will avoid the possibility of inconsistent judgments about the JMS Defendants' conduct and practices, and will ensure just compensation for those members of the Class who drive for the JMS Defendants and would otherwise be deterred from bringing suit individually or directly for fear of retaliation by the JMS Defendants.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(Brought on behalf of the Plaintiffs and the Rule 23 Class)**

48. The Plaintiffs and Class members re-allege and incorporate by reference all allegations in this Complaint as if set forth herein.

49. At all relevant times, the Plaintiffs and Class members entered into valid and

enforceable contracts with the JMS Defendants in the form of the Leases—i.e., the Operating Agreement and the CBA, containing materially identical provisions.

50. Pursuant to the Leases, the JMS Defendants were required to pay the Plaintiffs and Class members an amount equal to a set percentage of gross revenue received from the JMS Defendants' customer(s), as well as 100% of any fuel surcharge that was charged to the customer for the loads that the Plaintiffs and Class members drove. (Operating Agreement ¶ 2 Ex. A; CBA ¶ 5, App'x A.)

51. In breach of their Leases with the Plaintiffs and Class members, the JMS Defendants failed to pay the Plaintiffs and Class members the amounts due and owing under their Leases, including, without limitation, those amounts equal to 100% of the billed fuel surcharge for the loads that the Plaintiffs and Class members drove.

52. Pursuant to the terms of the JMS Defendants' standard Leases with the Plaintiffs and Class members, the JMS Defendants were required to provide accurate and timely disclosure of the amounts that the JMS Defendants charged to their customers for the loads that the Plaintiffs and Class members drove, including, without limitation, disclosure of all amounts billed for fuel surcharge reimbursement. (Operating Agreement, Introduction and ¶¶ 2-3; CBA ¶¶ 6, 15, 18.)

53. Pursuant to the terms of the JMS Defendants' standard Leases with the Plaintiffs and Class members, the JMS Defendants were required to provide copies of, or the right to review, the freight bills and/or substantially similar documentation reflecting the amounts that the JMS Defendants actually charged to their customers for the loads that the Plaintiffs and Class members drove, but the JMS Defendants have failed and refused to do so. (Operating Agreement, Introduction and ¶¶ 2-3; CBA ¶¶ 6, 15, 18.)

54. In breach of their Leases with the Plaintiffs and Class members, the JMS

Defendants failed to provide accurate and timely disclosure of the amounts that the JMS Defendants charged to their customers for the loads that the Plaintiffs and Class members drove, including, without limitation, disclosure of all amounts billed for fuel surcharge reimbursement.

55. As a natural result of the JMS Defendants' breaches of their written contracts with the Plaintiffs and Class members, the Plaintiffs and Class members have incurred monetary damages equal to, at minimum, those amounts that were wrongfully withheld and not accurately disclosed by the JMS Defendants.

## SECOND CLAIM FOR RELIEF
**Violations Under the Truth-in-Leasing Act, 49 U.S.C. § 14704, and its Corresponding Regulations Under 49 C.F.R. § 371.1 *et seq.* and 49 C.F.R. § 376.1 *et seq.*
(Brought on behalf of the Plaintiffs and the Rule 23 Class)**

56. The Plaintiffs and Class members re-allege and incorporate by reference all allegations in this Complaint as if set forth herein.

57. Under their Leases with the Plaintiffs and Class members, the JMS Defendants were required to meet the Lease Requirements of 49 C.F.R. § 3767.12, as well as the Records Requirements of 49 C.F.R. § 371.3.

58. Contrary to these requirements, the JMS Defendants have adopted a policy and practice of refusing to provide, or otherwise refusing to permit the Plaintiffs and Class members to review, records reflecting the actual amounts that the JMS Defendants charge their customers in violation of 49 C.F.R. § 376.12(g) and 49 C.F.R. § 371.3(c).

59. Not only that, but the JMS Defendants have adopted a policy and practice of making inaccurate disclosures to the Plaintiffs and Class members of the information appearing on the rated freight bills with their customers in violation of 49 C.F.R. § 376.12(g), and of paying drivers less than what is owed in violation of 49 C.F.R. § 376.12(d).

60. In addition, the JMS Defendants have adopted a policy and practice of wrongfully

withholding and failing to account for funds held in escrow pursuant to their written Leases with drivers in violation of 49 C.F.R. § 367.12(k).

61. The JMS Defendants' violations of 49 C.F.R. § 371.1 *et seq.* and 49 C.F.R. § 376.1 *et seq.* have caused the Plaintiffs and Class members to incur monetary damages equal to, at a minimum, those amounts that the JMS Defendants failed to disclose and disburse as required under the Leases and federal law, including, without limitation, the full amounts charged to customers for fuel reimbursement.

62. Pursuant to 49 U.S.C. § 14704, the Plaintiffs and Class members are endowed with the private right to commence a civil action for damages and other relief arising from the JMS Defendants' violations of the enacting regulations promulgated under the Truth-in-Leasing Act.

63. In addition to monetary damages, 49 U.S.C. § 14704(e) entitles the Plaintiffs and Class members to an award of their reasonable attorneys' fees and costs incurred in connection with this action to enforce their rights under the Leases and for the JMS Defendants' unlawful violations alleged herein.

## THIRD CLAIM FOR RELIEF
### Fraud
**(Brought on behalf of the Plaintiffs and the Rule 23 Class)**

64. The Plaintiffs and Class members re-allege and incorporate by reference all prior allegations in this Complaint as if set forth herein.

65. At all relevant times, the JMS Defendants owed a duty to make a complete and accurate disclosure to the Plaintiffs and Class members of the full amounts billed to customers whose loads the Plaintiffs and other Class members were driving for the JMS Defendants.

66. Despite this duty, the JMS Defendants knowingly and purposefully adopted a policy and practice of making intentionally false, material, inaccurate, and incomplete disclosures

of the full amounts billed to customers, including by omitting disclosure of the full amount paid by customers for fuel reimbursements when providing settlement statements and freight documentation to the Plaintiffs and Class members.

67. The JMS Defendants knowingly and purposefully adopted a policy and practice of making intentionally false, material, inaccurate, and incomplete disclosures of the full amounts billed to customers with an expectation that the Plaintiffs and Class members would reasonably and justifiably rely on this materially inaccurate disclosure to the detriment of the Plaintiffs and Class members, and to the benefit and gain of the JMS Defendants.

68. By failing to make accurate and complete disclosure of the full amounts billed to customers for the loads driven by the Plaintiffs and Class members, the JMS Defendants intended to deceive and have defrauded the Plaintiffs and Class members of those amounts that were supposed to be paid for reimbursement of the Plaintiffs' and Class members' out-of-pocket fuel expenses, thereby proximately causing the Plaintiffs and Class members damages of at least the undisclosed amounts.

69. The fraudulent conduct of the JMS Defendants alleged herein constitutes a continuing wrong that is part and parcel of a singular and ongoing scheme and artifice to defraud the Plaintiffs and Class members.

### FOURTH CLAIM FOR RELIEF
**Breach of Fiduciary Duty**
**(Brought on behalf of the Plaintiffs and the Rule 23 Class)**

70. The Plaintiffs and Class members re-allege and incorporate by reference all allegations in this Complaint as if set forth herein.

71. At all relevant times, the JMS Defendants were to handle all matters relevant to invoicing customers and then holding and disbursing monies received from such customers to the

Plaintiffs and Class members for those routes that the Plaintiffs and Class members drove pursuant to the Leases or substantially identical contracts alleged herein.

72. For example, the CBA provides that the JMS Defendants will exclusively handle all billing of freight charges to the customer on behalf of, and for the benefit of, the Plaintiffs and Class members.

73. Accordingly, the JMS Defendants held all monies received from the customers for the services provided by the Plaintiffs and Class members in constructive trust for the benefit of the Plaintiffs and Class members, owing all attendant duties of a trustee over such constructive trust.

74. At all relevant times, the Plaintiffs and Class members trusted and relied upon the JMS Defendants to accurately disclose and disburse the actual amounts held in constructive trust for the benefit of the Plaintiffs and other members of the Class.

75. At all relevant times, the Plaintiffs and Class members trusted and relied upon the JMS Defendants to *not* knowingly and purposefully make false disclosures about, and withhold, the actual amounts held in constructive trust for the benefit of the Plaintiffs and members of the Class.

76. Despite holding these amounts in constructive trust for the benefit of the Plaintiffs and Class members, the JMS Defendants breached their fiduciary duties of loyalty, candor, and care attendant to such amounts held in constructive trust by, among other things, failing to disclose the true amounts received and held pursuant to such a relationship of trust, and then withholding and misappropriating those amounts that were not properly disclosed.

77. The acts and omissions of the JMS Defendants constituting a breach of the duties of loyalty, candor, and care have directly and foreseeably caused monetary damage to the Plaintiffs

and Class members in an amount equal to not only those amounts that the JMS Defendants wrongfully failed to disclose and then withheld from the Plaintiffs and Class members, but also those amounts that were paid to the JMS Defendants in fees or other compensation for purporting to handle these invoicing and custodial matters on behalf of the Plaintiffs and other Class members.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment (In the Alternative)**
**(Brought on behalf of the Plaintiffs and the Rule 23 Class)**

78. The Plaintiffs and Class members re-allege and incorporate by reference all allegations in this Complaint as if set forth herein, but advance this alternative claim for unjust enrichment in the event that it is determined that there is no adequate legal remedy at law available to the Plaintiffs and Class members to recover those amounts that the JMS Defendants received and retained as compensation and reimbursement for expenses that the Plaintiffs and members of the Class actually incurred.

79. For example, the JMS Defendants invoiced and received monies from their customers for the reimbursement of services and out-of-pocket expenses actually provided and incurred by the Plaintiffs and Class members – ***and not*** by the JMS Defendants – including, without limitation, amounts for the reimbursement of out-of-pocket fuel expenses actually incurred and paid by the Plaintiffs and Class members.

80. The JMS Defendants have retained and been unjustly enriched by retaining such amounts that were paid to reimburse the services and out-of-pocket expenses incurred by the Plaintiffs and Class members.

81. It would be inequitable to permit the JMS Defendants to retain such amounts intended as reimbursement for the out-of-pocket expenses incurred by the Plaintiffs and Class members, particularly when the JMS Defendants did not incur any such expenses themselves and,

moreover, repeatedly misrepresented to the Plaintiffs and Class members the true amount that it was receiving for such reimbursements.

82. Accordingly, and in the alternative to the other claims advanced in this pleading, the Plaintiffs and Class members seek judgment against the JMS Defendants for the disgorgement of all such amounts that the JMS Defendants have withheld to their unjust enrichment.

## SIXTH CLAIM FOR RELIEF
### Demand for an Accounting

83. The Plaintiffs and Class members re-allege and incorporate by reference all allegations in this Complaint as if set forth herein.

84. The Plaintiffs and the Class members are owed unpaid amounts that the JMS Defendants have withheld based on information uniquely in the possession of the JMS Defendants.

85. The Plaintiffs and Class members are entitled, pursuant to the rights and remedies in the Truth-in-Leasing Act, 49 U.S.C. § 14704, and its corresponding regulations under 49 C.F.R. § 371.1 et seq. and 49 C.F.R. § 376.1 et seq., to an accounting to determine the amount and location of all monies that the JMS Defendants have ever received, held, or disbursed, for the purported benefit of any of the Plaintiffs and Class members.

86. In addition, the Plaintiffs and Class Members are entitled as a matter of equity to an accounting of the constructive trust established by the JMS Defendants' unique custody and control of business records reflecting the amounts received from customers that should have been paid and disbursed to the Plaintiffs and Class members by the JMS Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually, and on behalf of the Rule 23 Class, pray for relief as follows:

A. For an order of judgment against the JMS Defendants awarding compensatory and

punitive damages allowed by law, plus interest on the judgment;

      B.      In the alternative, for an order of judgment against the JMS Defendants awarding restitution and disgorgement damages allowed in equity, plus interest on the judgment;

      C.      For an order and judgment that the JMS Defendants must provide an accounting;

      D.      For an order of judgment awarding the Plaintiffs their reasonable attorneys' fees and costs incurred in connection with this action; and

      E.      For an order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: June 24, 2022                               DORSEY & WHITNEY LLP

By: */s/ Kirk W. Schuler*
Kirk W. Schuler (#AT0008844)
Michael Stinson (*pro hac vice* forthcoming)
Charles J. Pults (*pro hac vice* forthcoming)
801 Grand Ave., Ste. 4100
Des Moines, IA 50309
Tel: (515) 283-1000
Fax: (515) 283-1060
Email: schuler.kirk@dorsey.com